UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY DOCKET UNIT

2018 JUL -3  AM 10: 55

**Sean Sullivan**

                    Plaintiff,

  – against –

**AMENDED
COMPLAINT**

Civil Action No.:

18-CV-364 (PGG)

**The City of New York, Lincoln Center for the
Performing Arts, Inc., Liza Parker, Chief Operating
Officer of Lincoln Center, Robert Cundall, Chief
Financial Officer of Lincoln Center, Kelvin Triplett,** a
person holding himself out to be a security officer at
Lincoln Center**, Nashon DuBose,** a person holding
himself out to be a security officer at Lincoln Center**,
Panagis Peter Dalmaneras,** a person holding himself out
to be a security officer at Lincoln Center**, The New York
Public Library, Astor, Lennox, and Tilden
Foundations, Anthony W. Marx,** President of the New
York Public Library, **Jane Doe #1,** a library employee at
the Library for the Performing Arts who ejected the
Plaintiff from the premises and claimed to have called the
police to have the Plaintiff removed, **Police Officer
Nendell Barker, Shield No. 21059, Police Officer
Frances Hickey, Shield No. 22291,**

                    Defendants,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-3-18

## I.    Introduction

    1. This is a civil rights and tort action in which the Plaintiff seeks declaratory, injunctive
and compensatory relief for the violation of his rights secured by 42 U.S.C. § 1983, the First,
Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State
of New York. Each and all of the various Defendants' acts alleged herein were done by the
Defendants, their agents, servants and employees, to the extent applicable, and each of them,

1

under the color and pretense of the statutes, ordinances, regulations, customs and usages of the City of New York ("NYC"), and, where applicable, under the authority of their office as members of the police force of said city.

2.   In all, the various named Defendants subjected the Plaintiff to an array of violations of his unmistakable constitutional and legal rights, subjected the Plaintiff to unconstitutional NYC rules and regulation, and the Plaintiff thereby seeks declaratory and injunctive relief, as well as compensatory and punitive damages, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

## II.    The Parties

3.   Sean Sullivan, the Plaintiff, is an unemployed attorney residing within the jurisdiction of this Court.

4.   Defendant, THE CITY OF NEW YORK ("NYC"), was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the City and/or State of New York.

5.   THE POLICE DEPARTMENT OF THE CITY OF NEW YORK (the "NYPD"), was and still is an agency and/or department and/or entity of NYC duly organized and existing under and by virtue of the laws of the City and/or State of New York.

6.   NYC maintains a police department, namely the NYPD, where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by NYC, and is thereby liable to the Plaintiff for the acts complained of herein under, among others, the theories of vicarious liability and respondeat superior.

7.  The NYPD maintains a police department where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by practice and custom in accordance with certain guidelines and policies, including, without limitation, a Patrol Guide describing proper procedure for police officers when interacting with private citizens.

8.  LINCOLN CENTER FOR THE PERFORMING ARTS, INC. ("Lincoln Center") is a domestic not-for-profit corporation duly organized and existing under and by virtue of the Laws of the State of New York with its principal place of business located at 70 Lincoln Center Plaza in the City, County and State of New York.

9.  Defendant, LIZA PARKER, is Chief Operating Officer of Lincoln Center and has held this position at all relevant times.  Ms. Parker is sued in her individual and official capacity.

10.  Defendant, ROBERT CUNDALL, is Chief Financial Officer of Lincoln Center and has held this position at all relevant times.  Mr. Cundall is sued in his individual and official capacity.

11.  At all relevant times, Defendant KELVIN TRIPLETT held himself out to be a security officer at Lincoln Center.  Mr. Triplett is sued in his individual and official capacity.

12.  At all relevant times, Defendant NASHON DUBOSE held himself out to be a security officer at Lincoln Center.  Mr. DuBose is sued in his individual and official capacity.

13.  At all relevant times, the Defendant PANAGIS PETER DALMANERAS  held himself out to be an employee of Defendant, Lincoln Center, working as a security officer on the Lincoln Center campus. Mr. Dalmaneras is sued in his individual and official capacity.

3

14. Defendant, THE NEW YORK PUBLIC LIBRARY, ASTOR, LENOX, AND TILDEN FOUNDATIONS (the "NYPL") is a public corporation that was created by the consolidation of three New York library companies in accordance with an act of the New York State Legislature in 1895, and whose executive offices are located at 445 Fifth Avenue, New York, New York 10018.  According to the Charter of the NYPL, the NYPL's purpose is "to establish, operate and maintain a free public library and reading room in the city of New York." The NYPL is managed by a board of directors on which the Mayor of the City of New York, the Comptroller of the City of New York, and the President of the City Council of the City of New York, each sit *ex officio*.  Furthermore, the NYPL receives a majority of its yearly operational revenue from government sources and the NYPL's Charter provides that it "shall be a member of the University of the State of New York."  The Library for the Performing Arts is controlled and operated by the NYPL.

15. Defendant ANTHONY W. MARX, is President and Chief Executive Officer of the NYPL, and held these positions at all relevant times.  Mr. Marx is sued in his individual and official capacity.

16. At all relevant times, Defendants JANE DOE # 1, is or was at all relevant times an employee of the NYPL acting in the capacity of an agent, servant, or employee of Defendant NYPL.  The Plaintiff is unable to determine the name of this Defendant at this time and thus sues her under a fictitious designation.  Jane Doe # 1 is sued in her individual and official capacities.

17. At all relevant times, the Defendant POLICE OFFICER NENDELL BARKER held himself out to be an employee of the NYPD acting under the color of law.  Police Officer Barker is sued in his individual and official capacities.

18.   At all relevant times, the Defendant POLICE OFFICER FRANCES HICKEY held himself out to be an employee of the NYPD acting under the color of law.  Police Officer Hickey is sued in his individual and official capacities.

19.   At all times relevant herein, the named individual defendants and the unnamed Jane Doe defendant (collectively, the "Defendants") were acting under color of law as agents, servants, employees and officers of NYC, the NYPD, Lincoln Center or NYPL, as applicable, or at the direction of or in conspiracy with NYC, the NYPD, Lincoln Center or NYPL, and otherwise performed and engaged in conduct incidental to the performance of their professional functions in the course of their duties.   Police Officer Barker and Police Officer Hickey are collectively referred to herein as the "Police Officer Defendants."

20.   On or around January 18, 2017, a Notice of Claim regarding the claims set forth herein was duly served on the New York City Comptroller's Office by personal delivery; and more than thirty (30) days have elapsed since the presentation of the aforesaid demand and claim, and Defendant NYC and the Comptroller thereof, have refused to make an adjustment for payment thereof, and this action was commenced within one (1) year and ninety (90) days and/or one (1) year after the cause(s) of action accrued, in accordance with the provisions of Section 504 of the General Municipal Law,  and all relevant sections of law applicable hereto.

21.   The Defendants' acts hereafter complained of were not objectively reasonable, and were carried out intentionally, recklessly, with malice and/or gross disregard for the Plaintiffs' rights.

22.   The limitations on liability set forth in CPLR 1601 do not apply to this action.

23.   The limitation in liability set forth in CPLR 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR 1602.

### III.   The Basis for Jurisdiction

24.   This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343.  This Court also has supplemental jurisdiction over the claims for relief arising under New York statutory and common law pursuant to 28 U.S.C. § 1376(a) because they form part of the same controversy and derive from the same facts.

25.   This action is brought in this Court pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, as well as New York State statutory and common law.

26.   Venue is proper pursuant to 28 U.S.C. §1391(b) in that the Plaintiff has been residing in this district and the Defendants are subject to personal jurisdiction in the Southern District of New York.

### IV.   The Facts

27.   On the morning of January 12, 2017, the Plaintiff visited the campus of Lincoln Center on the Upper West Side of Manhattan.  On said campus, there is a public garage below the Metropolitan Opera House and Damrosch Park where there are public restrooms accessible to and customarily used by the public whenever the need arises while visiting the Lincoln Center campus.  The Plaintiff availed himself of the men's restroom at this location early that morning. Less than ten minutes after the Plaintiff entered a stall in that men's restroom, the Plaintiff heard someone enter the restroom and scream in his direction, "Hurry up."  This person quickly exited the restroom, and the Plaintiff, not knowing who was responsible for this command, left the stall and the bathroom to find out who was the person who made this command.

28.  Mr. Triplett, a person holding himself out as a security officer at Lincoln Center, told the Plaintiff that he was the person who made the command and the Plaintiff retorted to Mr. Triplett that his action was inappropriate and uncalled for and that he would make a complaint to his superiors.  As the Plaintiff had left his belongings in the bathroom stall, the Plaintiff re-entered the restroom to gather his belongings and change some clothing.  Within three minutes of re-entering the bathroom, Mr. Triplett entered the restroom once more with a second person, Defendant Mr. Dubose, another person holding himself out to be an employee of Lincoln Center. Mr. Triplett and Mr. DuBose (together with Mr. Dalmaneras, the "Lincoln Center Security Defendants") ordered the Plaintiff to vacate the men's restroom immediately, although there was no one waiting to use the stall and the Plaintiff was inconveniencing no one, as it was a weekday morning with very sparse pedestrian traffic in the area.

29.  When the Plaintiff refused to leave at once and asked to speak to their "boss," Mr. DuBose stated that he was the "boss" and that I needed to leave the facilities immediately.  Mr. DuBose and Mr. Triplett then forcibly attempted to open the bathroom stall, gathered what the Plaintiff assumed to be "cleaning chemicals," and sprayed such chemicals on the bathroom stall and the Plaintiff's person.  Because the chemicals began to burn the Plaintiff's eyes and skin, the Plaintiff ultimately relented and took no further steps to prevent the stall door to be opened by the Lincoln Center Security Defendants.  Mr. DuBose and Mr. Triplett were now accompanied by a third man, Defendant Panagis Peter Dalmaneras, who insisted that I leave immediately and "never come back."  Mr. DuBose took out a cellphone camera and began to photograph the Plaintiff while the Plaintiff was in the stall of the restroom without asking for or receiving the Plaintiff's consent to be photographed under those circumstances.  Mr. DuBose stated that he would share these photographs of the Plaintiff with others.  At his point, the verbal confrontation

between the Plaintiff and Mr. DuBose increased such that the Plaintiff threatened to file a lawsuit against all concerned for this physical assault and invasion of privacy, among other claims.

30.   The Plaintiff eventually gathered his belonging in the bathroom stall and, in order to catch his breath and regain his equilibrium, entered a sitting area in the basement adjacent to the Metropolitan Opera House that members of the public typically use as a resting area.  The Plaintiff periodically spent time in this public area over the past few years, where he would read or pursue personal writing projects.  Mr. Dubose, Mr. Triplett and Mr. Dalmaneras followed the Plaintiff from the restroom to this entirely separate public area and demanded that the Plaintiff and the other members of the public "clear out" the area, without giving any reason for this order.  The Plaintiff, not wanting to continue a confrontation with these three Defendants, and having decided to report their outrageous behavior to their superiors, then made his way across the plaza to Geffen Hall, where there is a lounge area and coffee shop open to the public.

31.   The three Defendants then followed the Plaintiff to Geffen Hall, screaming that the Plaintiff was "forever banned" from the Lincoln Center campus.  All the while, the Plaintiff had ordered a cup of coffee at the café in Geffen Hall and sat down to enjoy his beverage in the seating area designated for that purpose.  Mr. DuBose and Mr. Triplett threatened to call the police to have the Plaintiff "forcibly removed" from Geffen Hall and soon returned with two police officers, Defendants Barker and Hickey, both of whom appeared to be dressed in New York City Police Department counter-terrorism flak jackets and other equipment, and are apparently members of NYPD's Critical Response Team, a unit responsible for counter-terrorism duties.  Mr. DuBose and John Doe #1 then forcibly removed the Plaintiff out of his seat, gathered the Plaintiff's backpack and belongings, throwing them out of the door while the Plaintiff

attempted to drink his just-purchased hot coffee, and the Police Officer Defendants supported them in removing the Plaintiff from Geffen Hall.

32.   The Plaintiff asked the Police Officer Defendants why he was being removed from Geffen Hall and one of them stated "because these gentlemen want you to leave," while the other assented.  The Plaintiff then asked the Police Officer Defendants do they know why the Lincoln Center security personnel wanted him removed and the Police Officer Defendants admitted that they did not why the Plaintiff was being removed.  The Police Officer Defendants then expressed impatience with the Plaintiff's questions and threatened to arrest the Plaintiff.  At this point, Police Officers Barker and Hickey escorted the Plaintiff forcibly out of Geffen Hall.

33.   The Plaintiff then began to make way on his own accord to the New York Public Library branch at the northwest portion of the Lincoln Center campus.  When Officers Barker and Hickey saw the Plaintiff going in that direction, they then chased him down and physically barred him from entering the public library.  When the Plaintiff asked them why he was being blocked from entering a public library, Police Officers Barker and Hickey repeated that the Plaintiff was "banned from the Lincoln Center campus." The Plaintiff was cornered at a section in front of the Library of Performing Arts with the armed Police Officer Defendants towering over him, and taking steps to restrain him.  Finding the situation completely hopeless and not wanting to risk being placed in a cell on Rikers Island, the Plaintiff relented and allowed himself to be moved completely off the Lincoln Center campus by the Police Officer Defendants.

34.   Up until the time of this incident, the Plaintiff had frequented the Library for the Performing Arts on a regular basis because he did not own a personal computer, and this library branch contains an array of personal computers that could be used for research purposes when available.  Though most library branches had computers available to the public for forty-five

9

minute increments, the Library for the Performing Arts branch is a research branch with terminals that could be used for more extended periods, to the extent available.  The Plaintiff availed himself of his library to engage in research for literary purposes and legal research.  Furthermore, this branch contains librettos, musical scores, drama scripts and other performance arts related research materials not contained at other NYPL branches.

35.  Given the Plaintiff's devotion to and creative interest in the performing arts, the Plaintiff was severely traumatized by this unconscionable "ban" from the Lincoln Center campus without even the pretense of due process.  Over the course of his life, the Plaintiff had paid for and attended numerous opera performances at the Metropolitan Opera House, various ballet recitals at the David Koch Theater, and classical music performances at the then-named Avery Fisher Hall.  The Plaintiff even attended a black-tie fundraiser on behalf of the New York City Ballet in the past and had made monetary contributions to these organizations philanthropically.  More recently, the Plaintiff has been an avid patron of free performances and lectures at the Library for the Performing Arts, Josie Robertson Plaza and the David Rubenstein Atrium.  Because of the confrontation with the Lincoln Center Security Defendants, the Plaintiff has been arbitrarily "banned" from continuing his historical support of the arts at Lincoln Center.

36.  Later on the early evening of the incident in question, having satisfied himself that the NYPL is a distinct entity from Lincoln Center, the Plaintiff visited the Library for the Performing Arts to engage in his customary research and personal projects.  Once he sat down at a computer terminal, Defendant Jane Doe #1 approached the Plaintiff and told him that he had to leave the library at once because of the earlier incident with the Lincoln Center Security Defendants.  The Plaintiff objected, stating that the earlier incident had nothing to do with the library but Jane Doe #1 told the Plaintiff that she did not wish to discuss it and was going to call

the police to have him forcibly removed from the library.  The Plaintiff went to an employee at the security desk and informed her that the police had been called to remove him and asked her if he should stay and wait for the police to arrive.  The security officer told the Plaintiff he needed to leave, and the Plaintiff left the library at that point.

37.  The next day, the Plaintiff emailed Defendants Parker and Cundall to ensure that leadership at Lincoln Center was aware what occurred in their name.  In this email, the Plaintiff described the encounter with the Lincoln Center Security Defendants in some detail.  The Plaintiff offered four questions to Defendants Parker and Cundall, asking for clarity with regard to this "ban" imposed by the Lincoln Center Security Defendants and added "[y]our prompt attention and response to these inquiries would be greatly appreciated."  Ms. Parker responded on the same day to the Plaintiff's email with the following message, "Dear Mr. Sullivan, Please know that I will look into this matter and get back to you as soon as possible.  Thank you very much for bringing it to my attention.  Liz Parker."  Nevertheless, the Plaintiff never heard again from Ms. Parker or Mr. Cundall regarding this incident and the "ban" was never addressed.

38.  Notably, the Plaintiff has also been experiencing an extended unemployment period, and has been uniquely dependent on public facilities and public spaces like public libraries and the constituent parts of the Lincoln Center campus.  Furthermore, the Plaintiff has been involved in a drawn-out divorce with his ex-spouse with outstanding child support and custody issues, and the Plaintiff could not rule out that his ex-spouse would use unprovoked and illegitimate attacks against him in Family Court to support her untenable claims against the Plaintiff, as she has brought to the attention of that court past encounters the Plaintiff had with law enforcement even though the Plaintiff was never charged with a crime in those instances.

**V.      Applicable Organizational, Legal and Regulatory Frameworks Governing the Various Spaces on the Lincoln Center Campus**

39.  According to Lincoln Center's consolidated financial statements for the year ending June 30, 2016, "The Lincoln Center campus includes land and property owned by the City of New York (the City), such as The New York State Theater, Library/Museum, Damrosch Park, the Garage, and Josie Robertson Plaza." These financial documents further state, "The City-owner garage at Lincoln Center is operated under a license agreement from the City. Pursuant to the License Agreement with the City, all operating surpluses from the garage are utilized to help fund the security and maintenance expenses for the public areas."

40.  Damrosch Park is a 2.44-acre public park located on the Upper West Side of Manhattan, owned by the City of New York in trust for all of the people of New York, and located on the Lincoln Center campus. The park is located between West 62nd and 63rd Streets, and between Amsterdam and Columbus Avenues, immediately south of the Metropolitan Opera House and west of the David H. Koch Theater. Lincoln Center operates and manages this public park and the adjoining public garage pursuant to the aforementioned License Agreement with the City of New York.

41.  The Department of City Planning, an agency of NYC, regulates plazas and public meeting areas such as the ones at the Lincoln Center campus, some of which are deemed privately-owned public spaces, or "POPS." A Privately Owned Public Space is an amenity provided, constructed and maintained by a property owner/developer for public use in exchange for additional floor area. The David Rubenstein Atrium at Lincoln Center is a POPS space located on Broadway between 63rd and 64th Street. The Josie Robertson Plaza is a public plaza on city-owned land. POPS are primarily achieved as-of-right through incentive zoning.

According to the Zoning Resolutions of the City of New York, "All 'public plazas' shall be accessible to the public at all times, except where the City Planning Commission has authorized a nighttime closing." The City's Zoning Resolutions further provides, "To ensure a safe and comfortable environment for all 'public plaza' users, a maximum of one prohibition or "Rule of Conduct" sign may be located within the 'public plaza'. . . Such sign shall not prohibit behaviors that are consistent with the normal public use of the 'public plaza' such as lingering, eating, drinking of non-alcoholic beverages or gathering in small groups."

42. The New York City Department of Parks & Recreation manages all city-owned public parks in the five boroughs. A "public park "is any publicly owned park, playground, beach, parkway, or roadway within the jurisdiction and control of the New York City Commissioner of Parks & Recreation. Typically, public parks are open to the public on a nondiscrimination basis and are not subject to zoning regulations. A public parking garage is a building or part of a building that is used on a daily basis for public parking.

43. According to Section 1.03(c)(1) of the Rules of the City of New York governing city parks, "No person shall fail, neglect, or refuse to comply with the lawful direction or command of any member of the Police Department, peace officer, park supervisor or such person's superior, lifeguard or Department employee under the command of the Parks Enforcement Patrol Division. Violation of this paragraph constitutes a misdemeanor." Section 1.07(a) of such Rules and Regulations states, "Any violation of these rules shall subject the respondent to a civil penalty which may be recovered in a proceeding before the Office of Administrative Trials and Hearings pursuant to section 1049-1 of the Charter. Such proceedings will be commenced by the service of a civil summons returnable to the Office of Administrative Trials and Hearings in accordance with such section."

**VI.    The NYPD's Pattern and Practices of  Pursuing Unwarranted Trespass Criminal Claims Against Members of Minority Communities**

44.  Pursuant to a federal court order issued in <u>Ligon</u> v <u>the City of New York</u>, the New York City Police Department agreed to institute reforms to control for the abuse by police officers in pursuing stops and arrests for trespass against members of certain poor and minority communities.  According to the New York Civil Liberties Union, "On March 28, 2012, the NYCLU, The Bronx Defenders, LatinoJustice PRLDEF and civil rights attorney Chris Fabricant filed in the lawsuit in U.S. District Court for the Southern District of New York on behalf of residents of buildings enrolled in Operation Clean Halls and individuals who were unlawfully stopped and arrested on trespassing charges through the program. The City of New York, Former Police Commissioner Raymond Kelly and individual police officers who were involved in unlawful arrests are listed as defendants." In a 157-page opinion, Judge Scheindlin of the Southern District of New York found that for years the NYPD has known or should have known that its officers routinely violate constitutional rights through the Clean Halls program. Nonetheless the Police Department fails to adequately train officers about when they may legally make trespass stops, and that this practice "has risen to the level of deliberate indifference." She outlined a number of training and supervision remedies that she would consider requiring the Police Department to undertake after an additional hearing March 2013 hearing.

45.  In August 2013, Judge Scheindlin issued a joint opinion on remedial relief in both Ligon and Floyd v. City of New York, a challenge to the NYPD's street stop practices. In the order she appointed a monitor to oversee development and implementation of remedies designed to address the conduct found unconstitutional.   On July 30, 2014, Judge Analisa Torres denied the police unions' request to join the case in order to make way for a settlement. On October 31,

2014, the U.S. Court of Appeals for the Second Circuit denied the unions' appeal of Judge Torres's decision. On the same day, the Court of Appeals also dismissed the city's appeal of the 2013 decision filed by the Bloomberg Administration (which Mayor de Blasio had moved to withdraw in January 2014).

46.   On January 22, 2017, New York City agreed to settle a class action lawsuit accusing the NYPD of issuing criminal summonses without legal justification.  Judge Robert Sweet of the Southern District of New York approved the $75 million settlement in this cause of action where the lead plaintiff was issued summonses for disorderly conduct and trespassing because he had purportedly stayed in a building "without permission or authority."  The New York Civil Liberties Union noted in a November 2013 report that the NYPD's aggressive practices that encroach on the constitutional rights of minorities may not lead to incarceration for these victims but "they do impose significant collateral consequences, including financial burdens and hurdles to employment, childcare, education and housing."  Even though a monitor has been appointed to ensure that the NYPD institutes reforms, this selfsame monitor has told the federal court in as late as November 2016 that the NYPD has been slow to reform its pattern and practices.

47.   Given the slowness with which NYC has taken action to implement the reforms required of the NYPD by a federal court according to the NYPD's court-appointed monitor, and the NYPD's continual custom and practice of violating the constitutional rights of a vulnerable section of the city's population, this Court can conclude that NYC has a de facto municipal policy of trampling on the constitutional rights of certain communities by officers of the NYPD, as the Plaintiff complains of herein.  At the very least, in light of the extensive litigation NYC has lost with respect to the unconstitutional practices of the NYPD over the past five years,

NYC's lack of implementation of court-mandated reforms is evidence, in addition to other factors, of its deliberate indifference to the continuing unconstitutional misconduct of the NYPD.

## VII.    Statement of Claims

<u>AS AND FOR A FIRST CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE ABRIDGMENT OF THE PLAINTIFF'S FIRST AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION</u>

48.    That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 47 above with the same force and effect as if more fully set forth at length herein.

49.    Because Mr. Triplett, Mr. DuBose and Mr. Dalmaneras (together, the "<u>Lincoln Center Security Defendants</u>"), acting under color of state law, in their individual and official capacities and within the scope of their employment, denied the Plaintiff access to a public park owned by NYC, namely Damrosch Park and its environs, and public property owned by the City of New York and operated by Lincoln Center, all traditional public fora, and actually threatened to have the Plaintiff arrested and to otherwise restrain the Plaintiff were he to return to such public property in the future, even though the Plaintiff was not accused of or had not committed a crime or violated any law of the City or State of New York while availing himself of the aforementioned public fora, these Defendants violated the Plaintiff's right to exercise his right to free speech pursuant to the First Amendment, as guaranteed under the United States Constitution.

50.  Because the Police Officer Defendants and Jane Doe #1, acting under color of state law, in their individual and official capacities and within the scope of their employment, denied the Plaintiff access to the Geffen Center and the Library of the Performing Arts, respectively, and actually threatened to arrest the Plaintiff and to otherwise restrain the Plaintiff if he were remain on the premises of this public library and the other public spaces on the Lincoln Center campus, these Defendants violated the Plaintiff's right to exercise his right to free speech pursuant to the First Amendment, as guaranteed under the United States Constitution.  These Defendants had no legitimate reason for denying the Plaintiff access to the aforementioned public library or the public areas of the Lincoln Center campus generally, and should have known that any alleged violations of the rules and/or ordinances of NYC public parks by the Plaintiff or any member of the public are subject to summons notices and administrative procedures under New York law that were not followed in this instance by the Defendants.

51.  The aforementioned conduct of the Lincoln Center Security Defendants, the Police Officer Defendants and Jane Doe #1 was arbitrary and capricious and reflected policies and customs of Lincoln Center, the NYPL and the NYPD, respectively, that fail to serve or further a compelling or substantial governmental interest, these polices and customs, or lack thereof, were not unrelated to the censorship of protected speech and expression, were not content neutral time, place and manner regulations, and were not narrowly tailored to serve a significant governmental interest.  Furthermore, each of these Defendants willfully chose to intimidate the Plaintiff so as to upend the Plaintiff's right to Free Expression in government-created public fora pursuant to the First Amendment in violation of 42 U.S.C. § 1983, and to act in a manner in contravention of the Rule of the City of New York governing public parks owned by NYC.

52. The Police Officer Defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, refused to exercise independent judgment and slavishly followed the arbitrary and capricious acts of the Lincoln Center Security Defendants, resulting in conduct that arbitrarily denied the Plaintiff access to a public library and public parks for his personal use and expression, a fair exercise of his First Amendment rights, and sought to intimidate the Plaintiff from exercising his rights to avail himself of public fora on the same basis as other citizens of New York, rights guaranteed under the United States Constitution and New York State Constitution.

53. According to its organizing documents, the NYPL is a "Free Circulating Library." Pursuant to Section 253 of the New York State Education Law, "the term 'free' as applied to a library shall be construed to mean a library maintained for the benefit and free use on equal terms of all the people of the community in which the library is located." Accordingly, a resident of New York City has a New York law-created liberty interest or right to the use of a NYPL branch, as the Plaintiff has to use the Library of Performing Arts. Such right or liberty interest is also derivative of a person's First Amendment rights, as the purpose of a library is the free exchange of ideas, and such right may not be contravened without Due Process under the law.

54. That these Defendants are not entitled to either absolute or qualified immunity because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

18

55.  As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, *inter alia*, physical and mental pain, loss of income, injury to reputation and suffering and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 BECAUSE OF RETALIATION AGAINST THE PLAINTIFF FOR THE EXERCISE OF HIS FREE SPEECH RIGHTS

56.  That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 55 above with the same force and effect as if more fully set forth at length herein.

57.  That, by the acts alleged herein, the Lincoln Center Security Defendants, the Police Officer Defendants and Jane Doe's # 1, acting under color of state law, and in their individual and official capacities, and within the scope of their employment, have deprived the Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including but not limited to his right to be free from retaliation for the exercise of his freedom of speech and freedom of expression, freedom from a prior restraint on his constitutional rights without judicial sanction, and freedom to access a public forum.

58.  The Lincoln Center Security Defendants "banned" the Plaintiff from the entire campus of Lincoln Center indefinitely, without formal written notice or even taking the name or identifying information of the Plaintiff in order to enforce their wild edict, and the Police Officer

Defendants and Jane Doe #2 ratified and enforced the Lincoln Center Security Defendants'
arbitrary, capricious and sloppy "ban" of the Plaintiff from the Lincoln Center campus.  This
"ban" of the Plaintiff from public fora as described herein was instituted in retaliation of the
Plaintiff's exercise of his rights under the First Amendment to free speech and to access such
public fora on a nondiscriminatory basis.  These Defendants had no legitimate reason for
denying the Plaintiff access to a public park, the public library, and city property, and engaged in
content-based and even viewpoint-based discrimination when they instituted a "ban" on the
Plaintiff, and then prohibited the Plaintiff from availing himself of the various public and cultural
offerings of this vital area of New York City, and that such "ban" failed to serve a compelling or
substantial governmental interest, was not unrelated to the censorship of protected speech and
expression, and was not narrowly tailored to avoid unlawful infringement of speech or
expression.

59.  The Police Officer Defendants threatened to arrest or otherwise the detain the
Plaintiff, and ejected the Plaintiff from the Geffen Center and the Library for the Performing
Arts, in retaliation to the Plaintiff's verbal confrontation with the Lincoln Center Security
Defendants in a men's restroom at Lincoln Center and his use of city property for his own
personal expression and purposes.  On the morning in question, the Plaintiff was simply
attempting to avail himself of public city property for his own innocent personal purposes when
he was approached by the Lincoln Center Security Defendants, but these Defendants threatened
the Plaintiff with unwarranted legal action and ejected the Plaintiff from public property open to
all on a nondiscriminatory basis, purportedly because of the Plaintiff's perceived poverty and
homelessness.  The Plaintiff's then expression to the Defendants of the rights of indigent and
homeless persons to patronize a public arts center was a matter of "public concern" under

applicable First Amendment law. These Defendants either intentionally or with reckless disregard, pursued actions that resulted in the violation of the Plaintiff's constitutional rights.

60. The Lincoln Center Security Defendants and the Police Officer Defendants, acting on behalf of the Defendants Lincoln Center and NYC, have had a custom and practice of policing and providing security for public areas owned by the City of New York on a discriminatory basis, and without adequate policies and procedures to safeguard the constitutional rights of vulnerable populations of the State of New York, and this custom and practice allowed them to successfully intimidate the Plaintiff and chilled the Plaintiff's pursuit of and otherwise resulted in the violation of his First Amendment rights and rights as a citizen of the City of New York to avail himself of public parks, public libraries and other city property available to the public for his own personal purposes. Certain of these policies or customs described above amount to an unlawful delegation of governmental authority to private entities, such as Lincoln Center and the NYPL, by allowing private persons to use private security guards and police officers to control who may or may not avail themselves of public fora. Further, the policies or customs described above result in the violation of substantially more protected speech or conduct, such as the Plaintiff's, than is necessary to operate these public areas properly, thus chilling the exercise of rights protected by the Free Speech Clause and rendering their policies and customs unconstitutionally overbroad.

61. The Defendants Lincoln Center, NYPL and NYC are directly liable for the actions of its employees and assigns, including the above-named individual Defendant employees, agents, assigns and/or servants, and that it is liable to the Plaintiff for the harms exacted on the Plaintiff due to the customs and policies furthered by the police officers, employees of Lincoln Center and employees of the NYPL as alleged above.

62.   The individual Defendants referred to herein are not entitled to either absolute or qualified immunity because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

63.   As a direct and proximate result of the unconstitutional acts of the employees of the NYPD and NYPL referred to above, the Plaintiff suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish, loss of income, injury to personal and business reputation, humiliation and embarrassment.

AS AND FOR A THIRD CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 BECAUSE OF THE DEPRIVATION OF THE PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION

64.   The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 63 above with the same force and effect as if more fully set forth at length herein.

65.   By the acts alleged herein, the Police Officer Defendants, acting under color of law, and in their individual and official capacities, have deprived the Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in particular his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including but not limited to, his right to be free from the nonconsensual seizure of his person by a law enforcement officer without probable cause or reasonable suspicion that the Plaintiff was a suspect in a crime. No reasonable person in the Plaintiff's position could believe

that he was at liberty to ignore the presence of the Police Officer Defendants or the commands made by them to him on the morning of January 12, 2017.

66. The above-named Police Officer Defendants, not having a warrant to arrest the Plaintiff or reasonable suspicion that the Plaintiff was involved in a crime on that day, knew that the Plaintiff was innocent of any crime when they seized and detained him, escorted him from the Lincoln Center campus under the threat of arrest, and enforced an arbitrary, capricious and unlawful "ban" on the Plaintiff imposed by the Lincoln Center Security Defendants on the Plaintiff in an outrageous manner for no discernible reason other than to embarrass the Plaintiff for their own selfish purposes inconsistent with the proper functions of security personnel of public property owned by the City of New York.

67. Reasonably competent police officers and security officers working in NYC parks should be aware that the City of New York has detailed and comprehensive rules governing the conduct of patrons and visitors to parks owned or operated by NYC. Violations of these Rules and Regulations of the New York City Department of Parks & Recreation typically subject a person to "civil penalty" which may be recovered in a proceeding before the Office of Administrative Trials and Hearings and a neutral arbiter acting pursuant to the Charter of the City of New York. The acts of the Lincoln Center Security Defendants, as well as the Police Officer Defendants, in enforcing an outrageous "ban" of the Plaintiff on the morning of January 12, 2017 and thereafter demonstrated a willful usurpation of the aforementioned Rules and Regulations of the New York City Department of Parks & Recreation and a violation of the Plaintiff's constitutional rights.

68. The Defendant NYC is directly liable for the actions of its employees, including the above-named individual Defendants, agents, assigns and/or servants for such conduct committed as part of their employment, and NYC is liable to the Plaintiff for the harms exacted on the Plaintiff due to the customs and policies furthered by the Lincoln Center Security Defendants and the Police Officer Defendants as alleged above.

69. None of the Defendants referred to herein are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

70. As a direct and proximate result of the unconstitutional acts of the employees of the Defendants referred to above, the Plaintiff was discredited in the minds of many members of the community, and has suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 RIGHT TO DUE PROCESS

71. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 70 above with the same force and effect as if more fully set forth at length herein.

72. On the date of the incident and thereafter, the Plaintiff had a liberty interest to enter and remain in the public areas of the Lincoln Center campus on a nondiscriminatory basis like the rest of the general public who avail themselves of this essential NYC cultural and arts center.

Because the Plaintiff had not committed a crime or violated any ordinance or regulation governing such public property, the Lincoln Center Security Defendants and the Police Officer Defendants violated his Due Process rights when they enforced an unlawful "ban" of the Plaintiff from the Lincoln Center campus and a public library without first affording him adequate notice or a meaningful opportunity to be heard to challenge such arbitrary and capricious edicts.

73.   The Plaintiff has been "banned" from accessing the Lincoln Center campus and the adjacent public library by the Defendants without notice of the conduct that prompted such a decision, without any notice as to what he could do to have the ban withdrawn, and without any adherence to basic due process principles when denying a citizen access to public property open to the general public on a nondiscriminatory basis.  And such conduct described herein impinged on the Plaintiff's procedural and substantive Due Process rights under the U.S. Constitution. Furthermore, any violations of NYC Parks' rules and regulations are subject to civil penalty with applicable administrative due process safeguards that the Lincoln Center Defendants, Ms. Parker and Mr. Cundall upended and failed to honor with respect to the Plaintiff.

74.   Defendants Parker and Cundall, executive officers of Lincoln Center who had notice of the acts perpetrated by the Lincoln Center Defendants described herein, in not promulgating and enforcing adequate policies and procedures to ensure that the Due Process rights of the Plaintiff was not flouted by indefinitely banning and excluding the Plaintiff from clear public fora, under applicable law, without notice or an opportunity to be heard regarding such deprivations, are liable for the constitutional violations of the Plaintiff alleged herein as they are obliged to promulgate policies and procedures that respects the individual rights of New York State citizens who avail themselves of the public areas and city property located at the Lincoln Center Campus.

75.   Further, in ratifying and condoning the outrageous acts committed by the Lincoln Center Security Defendants on the morning in question, Defendants Parker and Cundall, as well as Defendant Jane Doe #1, have denied and flouted the Due Process rights of the Plaintiff under the U.S. Constitution and the due process rights of other similarly situated members of the public who have had their right to access public and public property curtailed without adequate and sufficient notice and an opportunity to be heard regarding these unconstitutional deprivations.

76.   It is the policy and/or custom of Lincoln Center and the NYPL, to deny the procedural Due Process rights of individuals denied access to public for a such as the Plaintiff as described above.  For instance, Lincoln Center and NYC were sued in May 2013 by members of the public for conspiring to exclude the public from Damrosch Park.  In a Settlement Agreement of such litigation entered into in December 2014, it is stated that "the City and [Lincoln Center] share the goal of continuing to make Damrosch Park a lively resource for public recreation and other park-related uses and recognize that special events that limit public access . . . should be the exception rather than the norm."  Furthermore, to the extent that the Plaintiff's conduct implicated any code of conduct of Lincoln Center or regulation of New York City parks, such code or regulation was impermissibly vague and overbroad in restricting constitutionally-protected conduct.

77.   The Defendants Parker and Cundall, as well as Defendant Marx, in their official capacities and within the scope of their employment, are responsible for the proper operation of public property owned by the City of New York and open to the public on a nondiscriminatory basis, and in ensuring that member of the public are not denied access to public parks, plazas and libraries for arbitrary and malicious purposes, in violation of the Plaintiff's First and Fourteenth Amendment rights under the United States Constitution.  These Defendants, jointly and

severally, their agents, servants, and/or employees failed to take reasonable steps to investigate the actions described herein to the Plaintiff's detriment and injury.

78.  These individual Defendants are not entitled to either absolute or qualified immunity for their intimidation of the Plaintiff because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

79.  By reason of the aforesaid, the Plaintiff was subjected to serious pain and great distress of mind and body, loss of income, injury to reputation, and humiliation and embarrassment.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR MUNICIPAL LIABILITY UNDER MONELL

80.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 79 above with the same force and effect as if more fully set forth at length herein.

81.     The Police Officer Defendants, acting under color of state law, in their individual and official capacities, detained the Plaintiff without reasonable suspicion or a legitimate purpose and ejected the Plaintiff from property open to the public generally because of arbitrary and capricious acts by the Lincoln Center Security Defendants contrary to applicable NYPD guidelines, and the Police Officer Defendants should have known that an the Plaintiff did not present a clear and present danger at the time nor did he engage in any activity that justified his indefinite "ban" from the Lincoln Center campus.

82.   Upon information and belief, police officers of reasonable competence would have sought more information and more creditable evidence before detaining the Plaintiff without reasonable suspicion or probable cause, and to the extent that the Police Officer Defendants believed that the Lincoln Center Security Defendants acts were justifiable, they would have ensured that the Plaintiff was provided written notice of his "ban" from the Lincoln Center campus, or a civil summons, with instructions as to how he could defend himself against this outrageous "penalty" imposed by the Lincoln Center Security Defendants.  Furthermore, in contravention of the NYC Police Department's Patrol Guide, upon information and belief, the Police Officer Defendants failed to prepare a "Stop Report" as is required for this sort of police encounter, and there appears to be cause to believe that they failed to prepare such a report to hide their unconstitutional misconduct.

83.   The Police Officer Defendants, acting under color of law, in their individual and official capacities, detained the Plaintiff without sufficient legal justification, and enforced and outrageous and unlawful "penalty" imposed by the Lincoln Center Security Defendants, in violation of the Plaintiff's right to Free Speech and Due Process under the United States Constitution.

84.   The unconstitutional acts described herein of the Police Officer Defendants and the Lincoln Center Security Defendants, acting on behalf of the Defendant NYC, was a last partially caused by a municipal policy of stopping and detaining citizens of New York City for no other reason than their racial and financial background,  as demonstrated in various recent cases and consent decrees; and employees of the NYPD  have consistently taken constitutionally infirm enforcement actions against minorities  and the poor by arresting, searching, detaining, and harassing many of such individuals without probable cause or reasonable suspicion of a crime

committed by such persons; and NYC failed to train its police officers to respect the constitutional rights of vulnerable black and poor New Yorkers like the Plaintiff; and have been deliberately indifferent to the pattern and practice of unconstitutional acts by policemen as described herein.

85. Moreover, NYC had a policy and custom to accost and detain minority men without reasonable suspicion and in violation of the Constitutional rights of these citizens; and NYC was deliberately indifferent to the Plaintiff's constitutional rights by failing to train and supervise employees of the NYPD in accordance with an implementation agreement of a federal court as described in detail above, and such deliberate indifference and failure to train and supervise are reflective of a policy and/or custom of NYC due to the city's historical policy of targeting and harassing certain groups of New Yorkers without legal justification, such as the Plaintiff, a homeless minority, as abundantly reported in newspapers and other media, and found in a landmark decision of a federal court in November 2013.

86. None of the Defendants are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

87. As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation, damage to reputation and mental anguish.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO A CONSPIRACY TO DENY PLAINTIFF'S RIGHTS UNDER U.S. CONSTITUTION

88. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 87 above with the same force and effect as if more fully set forth at length herein.

89. Upon information and belief, the Police Officer slavishly enforced the indefinite "ban" imposed by the Lincoln Center Defendants, and for all intents and purposes acted at the direction of employees of Lincoln Center personnel, to detain and escort the Plaintiff off of property open to the public without reasonable suspicion a crime was committed or about to be committed by the Plaintiff, and turned a blind eye to the physical assault on the Plaintiff by Lincoln Center personnel, acts that amounted to an abuse of power and conspiracy to humiliate and demean the Plaintiff.

90. Upon information and belief, the Lincoln Center Security Defendants, acting under the color of law and as providers of security of public city property, made arrangements with the Police Officer Defendants to create conditions such that the Plaintiff was falsely accused of trespassing and other crimes, detained without reasonable suspicion or probable cause, and worked consciously with the Police Officer Defendants to cover up their unconstitutional misconduct to the Plaintiff's detriment in order to avoid being held accountable for their misconduct. In accomplishing these acts, the Defendants acted with a knowing, wanton, malicious, unlawful, unreasonable, unconscionable, and flagrant disregard of the Plaintiff's lawful rights, privileges, welfare, and well-being, and are guilty of gross and egregious misconduct toward the Plaintiff.

91. The Police Officer Defendants and the Lincoln Center Security Defendants, jointly and severally, maliciously and deliberately provided false and/or incomplete information to the Plaintiff and members of the public in order to create the false impression that they were handling a dangerous situation with a person who was responsible for criminal activity, and failed to take any of the proper steps necessary to impose a sanction on a member of the public for allegedly violating a park regulation, since the Plaintiff was simply availing himself of a public restroom like any other citizen of New York is entitled to and engaged in no improper behavior.

92. Upon information and belief, the City of New York and Lincoln Center share revenues derived from the public use of Damrosch Park and the adjacent parking garage, making the City of New York and Lincoln Center a "common enterprise" for the purposes of the conspiracy against the Plaintiff's rights under the U.S. and New York State Constitutions described herein. Furthermore, the City of New York delegates municipal duties and responsibilities to Lincoln Center with respect to the management of the public areas and parking garage on the Lincoln Center Campus, and the Lincoln Center Security Defendants were thereby acting under the "color of the law" when they violated the Plaintiff's constitutional rights..

93. None of the Defendants are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

94. As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, inter alia, physical and mental pain, suffering and mental anguish, loss of income, injury to reputation, and humiliation and embarrassment.

31

<u>AS AND FOR A SEVENTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. §
1983 FOR FAILURE TO INTERVENE</u>

95. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 94 above with the same force and effect as if more fully set forth at length herein.

96. The Police Officer Defendants had ample opportunity to intervene in accordance with their professional responsibility as police officers of the City of New York to prevent the Lincoln Center Security Defendants, as well as their other colleagues, from engaging in unreasonable and unconstitutional activity by indefinitely "banning" the Plaintiff from public property in violation of his Due Process rights under the state and federal constitutions, from imposing "penalties" on the Plaintiff without Due Process, and from taking unwarranted and harmful physical action against the Plaintiff to remove the Plaintiff from public property, but in consequence of their intentional conduct and/or reckless indifference to the harms perpetrated against and attempted against the Plaintiff, the Police Officer Defendants furthered the violation of the Plaintiff's constitutional rights on the morning in question.

97. Ultimately, none of the Police Officer Defendants chose to exercise their discretion in preventing their fellow officers from violating the constitutional rights of the Plaintiff, all the while shielding the Lincoln Center Security Defendants from proper scrutiny of their shocking behavior at the Plaintiff's expense on the morning in question.

98. None of the Defendants are entitled to absolute or qualified immunity for these acts because the Defendants acts in turn were not objectively reasonable but were reckless, intentional and malicious.

99. By reason of the Police Officer Defendants' failure to intervene and prevent the violation of the Plaintiff's constitutional rights, the Plaintiff was subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal reputation, and great distress.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 FOR VIOLATIONS OF THE PLAINTIFF'S RIGHT TO PRIVACY

100. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 99 above with the same force and effect as if more fully set forth at length herein.

101. At the time of the relevant incidents, it was clearly established that a U.S. person has a Fourth and Fourteenth Amendment right to bodily privacy, and that a partially unclothed body of a person may not be viewed or recorded by a person acting under state law without that person's consent. Furthermore, a person has a right to privacy of his activities within a stall of a bathroom, be it a public or private restroom, and that right may not be encroached without that person's consent or for some other emergency purpose. The Plaintiff's right to privacy in his partially unclothed body while using a private stall in a bathroom is elemental to self-respect and personal dignity.

102.   On the date of the incident in question, the Plaintiff's constitutional right to privacy was violated by the Lincoln Center Security Defendants (particularly by Mr. DuBose) granted authority by Lincoln Center and NYC to monitor the public bathroom area in question, and such right was violated without furthering a compelling state interest and was not narrowly tailored to further such a compelling interest.

103. None of the Lincoln Center Security Defendants are entitled to absolute or qualified immunity for these acts because the Defendants acts in turn were not objectively reasonable but were reckless, intentional and malicious.

104.   By reason of this outrageous violation of the Plaintiff's constitutional rights to privacy, the Plaintiff was subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal reputation, and great distress.

## AS AND FOR AN NINTH CAUSE OF ACTION FOR THE DECLARATION OF THE UNCONSTITUTIONALITY OF SECTION 1.03(C)(1) OF THE RULES OF THE CITY OF NEW YORK PURSUANT

105.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 104 above with the same force and effect as if more fully set forth at length herein.

106.   Section 1.03(c)(1) Of the Rules of the City of New York (the "Follow Orders Rule") makes it a misdemeanor for a visitor to city parks to ignore the "commands" of employees of the NYPD and employees of city parks like the Lincoln Center Security Defendants.  The Follow Orders Rule violates the Due Process Clause and the First Amendment of the United States Constitution because, as written, it is overbroad and vague, giving New

York City residents poor guidance as to when to comply with the Follow Orders Rule and potentially criminalizing permissible First Amendment activity.

107.   Because Section 1.03(c)(1) of the Rules of the City of New York makes a member of the public criminally liable for refusing to obey a command or order of a police officer or park employee while visiting a public park, the Plaintiff had no choice but to comply with the arbitrary and capricious acts of the Police Officer Defendants and the Lincoln Center Security Defendants.  Accordingly, Section 1.03 should be declared unconstitutional under the Due Process Clause for overbreadth and vagueness as the public is made subject to criminal liability for simply calling into question unreasonable demands by police officers and park employees, and could suffer penalty for alleged "lingering" and other permissible behavior in public parks, in contravention to Supreme Court precedent.  Section 1.03(c)(1) is also unnecessary because the police and park employees have various ways to ensure that a public park is properly regulated without criminalizing non-adherence to their every word.  Accordingly, the Plaintiff respectfully requests that the Court declare Section 1.03(c)(1) of the Rules of the City of New York unconstitutional for overbreadth and vagueness as the public is made subject to criminal liability for simply calling into question unreasonable demands by police officers and park employees, and could suffer penalty for alleged "lingering" and other permissible behavior in public parks, in contravention to Supreme Court precedent.

## AS AND FOR AN TENTH CAUSE OF ACTION FOR ASSAULT AND BATTERY, AND UNLAWFUL SURVEILLANCE, UNDER APPLICABLE NEW YORK LAW

108.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 107 above with the same force and effect as if more fully set forth at length herein.

109.    The Lincoln Center Security Defendants intentionally sprayed the Plaintiff with industrial cleaning chemicals, without any just cause or probable cause, forcibly removed him from the Lincoln Center campus for no other reason than their malicious animus against the Plaintiff.

110.    The Plaintiff was physically injured as a result of this unjustified attack on his person by the Lincoln Center Defendants.

111.    The Plaintiff was wholly innocent of any crime and did not provide any justification in any way or manner for this outrageous method of ejecting him from a public restroom utilized by the Lincoln Center Security Defendants and was forced to submit to the aforesaid physical assault and unlawful surveillance entirely against his will.

112.    On the morning of the incidents in question, Defendant DuBose took photographs of the Plaintiff without the Plaintiff's consent while the Plaintiff was availing himself of a stall in a men's restroom.  The Plaintiff was entitled to an expectation of privacy while using such bathroom stall.  And Defendant DuBose expressed an intent to distribute such photographs of the Plaintiff in contravention of applicable unlawful surveillance laws in the New York State Penal Code.

113. The individual Lincoln Center Security Defendants intended to harm the Plaintiff physically and to invade his privacy while the Plaintiff was using a public restroom stall; the Lincoln Center Security Defendants were conscious that their acts would lead to physical and reputational harm against the Plaintiff, and the Plaintiff did not consent to the this physical assault or unlawful surveillance and this assault and unlawful surveillance was not otherwise justified.

114. The Defendants NYC, Ms. Parker, Mr. Cundall, and Lincoln Center are liable for the tortious assault and battery, and unlawful surveillance, of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

115. By reason of the aforesaid assault and battery, and unlawful surveillance, of the Plaintiff, he was subjected to great indignity, humiliation, serious pain and great distress of mind and body.

## AS AND FOR A ELEVENTH CAUSE OF ACTION FOR FRAUD AND CONSPIRACY UNDER APPLICABLE NEW YORK LAW

116. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 115 above with the same force and effect as if more fully set forth at length herein.

117. By the conduct and actions described above, the Lincoln Center Security Defendants imposed a penalty on the Plaintiff that exceeded their lawful authority and that they knew was not within their power as employees of Lincoln Center.  Said individual Defendants

did not possess legitimate charges against the Plaintiff, but still subjected the Plaintiff to an illegitimate and unprecedented sanction of denying him access to a vital city cultural center for the purpose of willfully and intentionally inflicting harm, pain and suffering upon the Plaintiff.

118. The purpose of imposing a "ban" on the Plaintiff was illegitimate intent to harm the Plaintiff without economic or social excuse or justification, which was outside the legitimate ends of security personnel or law enforcement. The acts and conduct of the Lincoln Center Security Defendants and Police Officer Defendants were the direct and proximate cause of significant injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the United States of America and the State of New York.

119. The Defendants, jointly and severally, their agents, servants, and/or employees failed to take reasonable steps to stop the tortious and unconstitutional acts committed against the Plaintiff and instead maliciously and deliberately aided and abetted such misconduct.

120. The Defendants NYC, Ms. Parker, Mr. Cundall, and Lincoln Center are liable for the tortious acts committed against the Plaintiff by the Defendants based upon the theories of respondeat superior and vicarious liability.

121. The Lincoln Center Security Defendants and the Police Officer Defendants acted with intentional, knowing, callous, and/or reckless indifference to the Plaintiff's rights by engaging in the acts described herein constituting a fraud and conspiracy.

122. By reason of the aforesaid, the Plaintiff was injured in mind and body, suffered injury to personal and business reputation, and loss of income and economic opportunity.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER APPLICABLE NEW YORK LAW

123.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 122 above with the same force and effect as if more fully set forth at length herein.

124.   The Lincoln Center Security Defendants, Ms. Parker, Mr. Cundall, Jane Doe #1 and the Police Officer Defendants acted in a manner that exceeded all reasonable bounds of decency with an intent to inflict emotional distress upon the Plaintiff since the Plaintiff would likely had been shocked by the incidents of his ejection and ban and, upon information and belief, a desire to embarrass him in public for no legitimate reason, and subject him to further humiliation.

125.   Upon information and belief, the Lincoln Center Security Defendants Ms. Parker, Mr. Cundall, Jane Doe #1 and the Police Officer Defendants did purposely, deliberately, intentionally, recklessly, wantonly, with malice, harass, annoy, humiliate and embarrass the Plaintiff, to interfere with and deprive the Plaintiff of the right to be at liberty, and deliberately to cause him to be humiliated in a pubic venue.

126. The individual Defendants referred to above did abuse and violate their own guidelines and rules and regulations in a deliberate attempt to assault and embarrass the Plaintiff and subject him to an illegitimate spectacle that was unjustified by any lawful authority or reasonable law enforcement necessity.

127.   The Defendants NYC, NYPL and Lincoln Center are liable for the tortious and intentional infliction of emotional distress against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

128.   By reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, indignity and great emotional distress.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR NEGLIGENCE AND FAILURE TO TRAIN UNDER APPLICABLE NEW YORK LAW

129.   The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 128 above with the same force and effect as if more fully set forth at length herein.

130.   The Defendants NYC, Lincoln Center and NYPL, and their agents, servants and employees, carelessly and recklessly failed to properly train and supervise their employees,  in that they failed to train their employees to refrain from exercising the proper deportment and temperament; and to otherwise act as reasonable, prudent employees; failed to give them proper instruction as to their deportment, behavior and conduct as representatives of their employer; and, in that the Defendants, their agents, servants and employees were otherwise reckless, careless and negligent in their conduct at the Plaintiff's expense on the date of this incident.

131.   The Defendants, its agents, servants and employees negligently, carelessly and recklessly performed their duties in that they failed to use such care in the performance of their

duties as a reasonably prudent and careful security officer or police officer would have used under similar circumstances; in that they were negligent, careless and reckless in the manner in which they operated, controlled and maintained their agents, servants, and employees; violating established rules, procedures and policies, and in that the Defendants, their agents, employees and servants were otherwise negligent, careless, and reckless.

132.   The aforesaid occurrence, and negligence in training personnel resulting in injuries therefrom, were caused wholly and solely by reason of the negligence of the Defendants NYC, Lincoln Center and NYPL, their agents, servants and employees without any negligence on the part of the Plaintiff.  Lincoln Center is liable for the tortious and negligent acts of its employees, including without limitation, the Lincoln Center Security Defendants. NYPL is liable for the tortious and negligent acts of its employees, including without limitation, Jane Doe #1.

133.   As a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and loss of personal and business income, and the Plaintiff has been otherwise damaged because of the unlawful "ban" of the Plaintiff and otherwise.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR THE VIOLATION OF THE NEW YORK STATE CONSTITUTION

134.   The Plaintiff repeats and re-alleges paragraphs 1 through 133 as if fully set forth herein.

135.   The Defendants subjected the Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving the Plaintiff of rights, privileges, and immunities secured by Article 1, §§ 11 and 12 of the New York State Constitution, including, without limitation, the following deprivations of his rights, privileges, and immunities:

i. The Plaintiff was deprived of his right to equal protection under the law and was subjected to discrimination based on his race as described above, in violation of New York State Constitution Article 1, § 11;  and

ii.   The Plaintiff was deprived of his right to be free from unreasonable searches and seizures as described above, in violation of New York State Constitution Article 1, § 12.

136.   As a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers great mental pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and the Plaintiff has been otherwise damaged.


AS AND FOR A FIFITEENTH CAUSE OF ACTION FOR PUNITIVE DAMAGES


137.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 136 above with the same force and effect as if more fully set forth at length herein.

138.   The various Defendants have violated important public policy interests in the maintenance of the integrity of law enforcement activity and the proper management of NYC

cultural resources open to the general public, and in misusing the trust bestowed on employees purportedly acting in the public interest.

139.  It is necessary to punish the Defendants for such egregious conduct and to deter the Defendants and any other law enforcement personnel, and those acting at their direction under the color of law, who might consider similar conduct in the future.

140.  Accordingly, punitive damages should be awarded against the Defendants, including NYC, the NYPL and Lincoln Center for the misconduct described herein.

## VIII.   Relief Sought

WHEREFORE, the Plaintiff respectfully requests that this Court:

1.  Declare that the Defendants' conduct alleged herein violated the Plaintiff's rights pursuant to the First, Fourth  and Fourteenth Amendments to the Constitution of the United States and the New York State Constitution and state common and statutory law in the manner alleged herein, upon the evidence adduced at trial or otherwise;

2.  Certify to the Attorney General of the State of New York under 28 U.S.C §2403(b) that the case presents the constitutionality in question of Section 1.03(c)(1) of the Rules of the City of New York making it a misdemeanor for a member of the public to ignore a "direction or command of any member of the Police Department";

3.  Enjoin the Defendants and their agents, employees, successors, and all others acting in concert with them, from enforcing the arbitrary, capricious and unlawful "ban" imposed by the Lincoln Center Security Defendants on the Plaintiff from enjoying the amenities of the Lincoln Center campus;

4.  Award the Plaintiff damages in an amount of no less than $3,000,000;

5.  Award the Plaintiff punitive damages in a yet undetermined amount for the Defendants' willful and malicious violations of the Plaintiff's rights;

6.  Award the Plaintiff reasonable attorneys' fees and costs as authorized under 42 U.S.C. § 1988; and

7.  Grant such other further and different relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 29th day of June, 2018.

_____

Signature of Plaintiff

General Delivery
390 Ninth Avenue
New York, New York 10001-9999
Sullivan9499@gmail.com
(347) 829-4714



Desi Sullivan
General Delivery
390 Ninth Avenue
New York, New York 10001

RECEIVED
SDNY DOCKET UNIT
2018 JUL -3  AM 10: 55

USM3
SDNY

Pro Se Intake Unit
United States District Court –
Southern District of New York
500 Pearl Street, Room 200
New York, New York 10007